**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**Case No. 5:20-cv-00067-TBR**

ANTONIO MASSEY                                                                                          PLAINTIFF

v.

STEVEN BIRDSONG, *et al.*                                                                               DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon *pro se* defendant Jesse Jenkins' Motion to Dismiss. [DN 43]. *Pro se* plaintiff Antonio Massey has responded. [DN 59]. Jenkins has not replied and the time to do so has passed. As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Jenkins' Motion to Dismiss [DN 43] is **GRANTED**.

**I. Background**

Massey is currently housed at Eastern Kentucky Correctional Complex; however, the Complaint concerns events that allegedly occurred while Massey was incarcerated at Kentucky State Penitentiary ("KSP"). Massey filed suit in this Court on April 20, 2020. [DN 1]. In his Complaint, he alleges he was refused a shower by Tianna LeGrand on May 12, 2019. "LeGrand stated Plaintiff had gave her the finger using the justification of canceling Plaintiff's shower." [*Id.* at PageID75]. Massey requested to speak with LeGrand's supervisor, Sgt. Joseph Kelly. [*Id.*] Sgt. Kelly spoke with Massey and gave him "a wash rag, to allow the Plaintiff to go back to his cell and take a wash off in the sink." [*Id.*] Massey "gave CO. TiAnna LeGrand the finger and started to walk back to his cell, when CO. TiAnna LeGrand unprofessionally had used provocative, and explicitive language towards the plaintiff". [*Id.* at PageID 76]. Massey then refused to go into his cell because he was not able to shower. [*Id.*]

Massey grabbed his mattress from his cell because he "had seen Sgt. Kelly retrieve the 40 caliber Mike-Mike gun." [*Id.*] A cert team was assembled and "Sgt. Steven Birdsong had brutally shot the plaintiff in his right eye crashing his eye socket bone around his eye pushing his eye in a downward position". [*Id.*] Massey further alleges Cpt. Jesse Jenkins was present but "did nothing, whatsoever to prevent curtail or limit the abuse". [*Id.* at PageID 77]. Massey states, "Jenkins had posed a serious threat when he had ordered for Defendant Birdsong to fire the 40-mm Launcher, striking plaintiff in the right eye." [*Id.* at PageID 72].

Massey filed an Eighth Amendment excessive force claim against Jenkins. Jenkins now moves to dismiss Massey's claim.

## II. Legal Standard

Attached to the motion to dismiss and the corresponding response are documentary exhibits and affidavits. None are referenced or alluded to in Massey's Complaint. Generally, if matters outside the pleadings are presented to the court on a motion to dismiss under Rule 12(b)(6), then the motion must be treated as one for summary judgment under Rule 56. Fed.R.Civ.P. 12(d).

The Court has considered the assorted exhibits offered by the parties and will convert this motion to dismiss under Rule 12(b)(6) to one for summary judgment under Rule 56.

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir.1996).

### III. Discussion

**A. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones*, 549 U.S. at 218-19. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). However, "failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be

established by the defendants." *Napier v. Laurel Cty. Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing Jones, 549 U.S. at 204).

The Kentucky Department of Corrections, Policies and Procedure ("CPP") 14.6 describes the process for an inmate to properly file a grievance. An inmate must file a grievance on a grievance form within five business days of the incident. [DN 43-1 at PageID 334]. The grievance must "include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance". [*Id.*]

Here, in his Complaint, Massey states he filed a grievance at Luther Luckett Correctional Complex ("LLCC") regarding this incident. [DN 1 at PageID 82]. Massey was housed at LLCC prior to being transferred to Eastern Kentucky Correctional Complex. Jenkins has attached an affidavit from Dagon Moon, the Grievance Coordinator at LLCC. Moon reviewed Massey's grievance records for grievances regarding the present incident on December 22, 2020. [DN 43-1 at PageID 303]. At the time of this review, Massey had filed more than forty grievances. [*Id.*] Massey filed one grievance alleging he was shot at KSP by Sgt. Birdsong. [*Id.* at PageID 306]. Moon found "no record of any grievance filed by Inmate Massey that in any way alleges that any officer instigated a confrontation with him resulting in him being shot with a 40mm launcher in May 2019 while he was housed at KSP." [*Id.*] Moon stated only one grievance—Grievance 19-419—alleged Massey was shot at KSP. [*Id.*]

In grievance number 19-419 Massey stated,

> I was shot in the face at Eddyville around 1 month ago by Sgt. Birdsong because I refused to go in to my cell. After this situation I was giving no medical attention [illegible] And to day is 06/18/19 and I have [illegible] get the proper medical attention. I have been trying to get medical attention since and have not.

[DN 43-1 at PageID 307]. That grievance was rejected because it was filed more than five days after the incident. [*Id.* at PageID 308].

Massey now presents letters he previously presented to this Court to argue he did exhaust his administrative remedies. Massey first attaches a letter from Captain John Dowdy of the Kentucky State Police that states he received a letter from Massey but could not investigate the complaint because Massey's complaint was against corrections officers. [DN 59 at PageID 453]. Massey next attaches a letter from Sergeant Brett Miller of the Kentucky State Police stating he would forward his letter to the "Kentucky Department of Corrections Internal Affairs Division for investigation". [*Id.* at PageID 454]. Finally, Massey attaches an undated and unaddressed letter that describes the incident and his resulting medical care. [*Id.* at PageID 456-457]. Jenkins is not mentioned by name in this letter.

These letters presented by Massey cannot substitute for proper exhaustion. The PLRA requires an inmate to "complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law" in order to exhaust administrative remedies. *Jones,* 549 U.S. at 218-219. Massey submitted a grievance regarding this incident, but it was properly rejected as it was not filed within five business days. Even if this grievance was filed within the proper timeframe, the grievance does not name Jenkins. The Court does not have discretion to waive the exhaustion requirement. *Ross v. Blake,* 578 U.S. 1174, 1857 (2016) ("For that reasons, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.") Therefore, Massey has not properly exhausted his administrative remedies and his claim against Jenkins must be dismissed.

## IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Jenkins' Motion to Dismiss [DN 43] is **GRANTED**. The Clerk is directed to **TERMINATE** Defendant Jesse Jenkins from this action.

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

August 21, 2021

cc: Antonio Massey
    267897
    Eastern Kentucky Correctional Complex
    200 Road to Justice
    West Liberty, KY 41472
    PRO SE

cc: Jesse Jenkins

cc: Steven Birdsong