IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH

| | |
|---|---|
| ANTONIO T. MASSEY, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) Case No. 5:20-cv-00067 (TBR) |
| STEVEN BIRDSONG *et al.*, | ) ) |
| *Defendants*. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Karen Smith's Motion for Summary Judgment, (Mot. for Summ. J.), Dkt. 83. Smith has also filed a motion to seal Plaintiff Antonio Massey's medical records, (Mot. to Seal), Dkt. 84. Massey has not responded, even though the Court ordered him to do so and also provided guidance on how to respond to a motion for summary judgment. *See* Orders, Dkts. 86 and 88. The time for Massey to respond has elapsed.

For the reasons that follow, Defendant Karen Smith's Motion for Summary Judgment, Dkt. 83, is **GRANTED** and Motion to Seal, Dkt. 84, is **GRANTED**.

**I.    FACTUAL BACKGROUND**

The facts of this case arise from events that occurred while Antonio Massey was incarcerated at Kentucky State Penitentiary ("KSP"). *See* Compl., Dkt. 1. Massey alleges that, on May 12, 2019, a corrections officer "brutally shot [him] in his right eye[,] crashing his eye socket bone around his eye [and] pushing his eye in a downward position." *id.* ¶ 22. As Massey tells it, Karen Smith, the nurse who provided immediate medical treatment, did "not comply[] with the Correctional Care Solution Regulations Policy and Procedures." *Id.* ¶ 29. Massey claims that although he was telling Smith that "he could not see out of his right eye and need[ed]

1

to go to the hospital," Smith simply assured Massey that "he was not blind and that he would be fine." *Id.* ¶ 30. Eighteen hours later, however, Massey was transferred to a hospital. *See id.* ¶ 35. Massey asserts that Smith violated protocol by not immediately "sending [him] to a[] hospital emergency room to be treated." *Id.* ¶ 29.

Smith fills in parts of the story left out of the Complaint. Notably, Smith claims that she examined the injury and observed "a laceration and contusions." Mot. for Summ. J. at 6. Smith states that she treated the laceration with a dressing and wound sealant and reinforced the dressing later that night. *See id.* Smith also claims that she provided Massey with an ice pack, requested that he be provided a safety smock or blanket, and arranged for him to be reevaluated by the nurse practitioner the next day. *See id.* According to Smith, it was the nurse practitioner who sent Massey to the hospital. *See id.* at 6–7. Medical records corroborate Smith's claims, and Massey does not dispute that Smith did in fact treat the injury.

Massey now brings a claim of deliberate indifference to serious medical needs against Smith in her individual capacity. *See* Compl.

## II.     LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.

*See Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . " Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

### III. DISCUSSION

#### A. *Failure to Exhaust*

The Prison Litigation Reform Act of 1995 ("PLRA") requires a prisoner to exhaust all available administrative remedies before filing any action "with respect to prison conditions" under 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *accord Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). Exhaustion is mandatory and the remedies provided "need not meet federal standards, nor must they be 'plain, speedy, or effective.' " *Porter*, 534 U.S. at 524 (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Proper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), and so "it is the prison's requirements, and not the PLRA, that define the boundaries of

proper exhaustion," *Jones v. Bock*, 549 U.S. 199, 218 (2007); *accord Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).

The health care grievance policy at KSP states, *inter alia*:

> A grievance about a specific incident or specific health care decision shall be filed within *five (5) business days* after the incident or decision occurs. . . . The grievant shall include all aspects of the issue and identify all individuals in the "Brief Statement of the Problem" section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step 1.

Grievance Policy, Dkt. 83-3, at 15–16 (emphasis added). The procedural process also requires that the grievance "shall be in writing and legible." *Id.*

In his Complaint, Plaintiff states that he filed a timely grievance about the May 12, 2019, incident but that it was rejected. *See* Compl. at 16. Massey's grievance records from Luther Luckett Correctional Complex ("LLCC"), Dkt. 83-4, and KSP, 83-5, provide some evidentiary support for this claim. In a grievance form dated June 28, 2019, Massey alleges that he submitted a grievance form on March 17, 2019, (five days after the incident) but that the corrections officer who collected his mail never turned the form in. *See* LLCC Grievances at 8. That June grievance form further alleges that Massey "spoke with caseworker Allen," who "stated that the reason why he didn't want to take [the] [March 17th] grievance form [was] because they hadn't been turning them in." *Id.*

Smith points out, however, that Massey only filed that June 28, 2019, grievance after the prison rejected Massey's June 21, 2019, grievance pertaining to the medical attention he received after being shot in the eye. *See id.* at 6. That June 21, 2019, grievance was untimely (it was filed more than a month after the events occurred) and failed to identify all relevant individuals (it never mentioned Karen Smith by name). *See id.* All of this, Smith concludes, means that

Massey's allegations from the June 28, 2019, grievance are not enough to show exhaustion of administrative remedies.

In order to defeat a properly supported motion for summary judgment based on a prisoner's failure to exhaust, a plaintiff must come forward with at least some evidence showing that he properly exhausted his administrative remedies or that there was something in his particular case that made the generally available remedies unavailable to him. *See Valdes v. Evans*, No. 20-6095, 2021 WL 7627520, at *3 (6th Cir. Oct. 29, 2021) ("In the absence of any proof of the filing of a grievance related to this surgery, [plaintiff] has not shown that he exhausted his administrative remedies as required by law."). Massey has met that burden here, because he has provided details regarding the date that the alleged grievance was submitted, specified the person to whom that form was submitted, and explained why that grievance form might not have been accepted. *See, e.g.*, *McMillian v. N.C. Cent. Prison*, No. 5:10-CT-3037-FL, 2013 WL 1146670, at *5 (E.D.N.C. Mar. 19, 2013) (holding that prisoner-plaintiff's "unsubstantiated and conclusory allegations that his grievances were not accepted by staff, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, are insufficient to refute defendants' arguments in support of their exhaustion defense.").

Smith may be correct that Massey did not actually exhaust his administrative remedies, but weighing such evidence would be inappropriate on summary judgment.

## B. *Deliberate Indifference*

Failure to provide adequate medical treatment to a prisoner is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment only when it results from "deliberate indifference" to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S.

97, 104 (1976). "Deliberate indifference requires more than mere negligence, more even than medical malpractice. It requires something akin to criminal recklessness." *Mitchell v. Hininger*, 553 F. App'x 602, 604 (6th Cir. 2014). Where, as here, the plaintiff received treatment for his condition, this standard requires a showing that "his treatment was 'so woefully inadequate as to amount to no treatment at all.' " *Id.* at 604–05 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Under this standard, Massey cannot show deliberate indifference. Medical records show that Nurse Smith treated Massey on the evening of May 12, 2019. Nurse Smith assessed Massey and observed a "laceration . . . located above the nose near the right eyebrow . . . approximately 1 inch in length."[1] Medical Records, Dkt. 85, at 102. Nurse Smith treated the laceration by applying a medical glue to the laceration, bandaging the eye, and providing ice packs to reduce swelling. *See id.* At that time Nurse Smith also requested that the nurse practitioner re-evaluate the injury the next day. *See id.* Later that night Nurse Smith reinforced Massey's dressing after observing "some bloody drainage." *See id.* at 101. Nurse Smith also requested that Massey receive a blanket to prevent any shivering, which could have caused increased pressure around the eye and worsened the injury. *See id.*

Massey argues that he should have been sent to a hospital earlier or received more aggressive treatment. *See* Compl. "But a desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." *Mitchell*, 553 F. App'x at 605 (collecting cases); *see also Stalker v. Bayonetto*, No. 2:15-cv-14325, 2016 WL 4571441, at *6 (E.D. Mich. Aug. 9, 2016) (allegation of "delayed . . . appropriate treatment . . . targets medical

---

[1] Defendant asks the Court to file a portion of Massey's medical records under seal. *See* Mot. to Seal. Due to the confidential nature of these records, and the fact that Massey has not objected to this motion, the Court grants Smith's motion.

staff's failure to provide more, better, or faster treatment . . . [and] [t]herefore . . . fail[s]"). Put differently, Massey "targets [Smith's] failure to provide more or better treatment, not indifference to his condition, what amounts to a plea for us to 'second guess medical judgments' as opposed to enforce the cruel-and-unusual-punishments ban in the Eighth Amendment." *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

What's more, Massey does not specify exactly what additional treatment he could have or should have received from Nurse Smith, other than being sent to the hospital earlier. And Massey does not explain how waiting the extra eighteen hours to go to the hospital in any way worsened his eye injury. To the contrary, Nurse Smith provides evidence that even if Massey had been rushed to the hospital, "the health outcome for his right eye would not have been any different than it was." Mot. for Summ. J. at 9 (quoting Bryant Aff., Ex. 83-2, at 4–5).

In sum, Nurse Smith's treatment was not so "woefully inadequate" as to amount to deliberate indifference.

## IV. CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendant Karen Smith's Motion for Summary Judgment, Dkt. 83, is **GRANTED** and Motion to Seal, Dkt. 84, is **GRANTED**.

**IT IS SO ORDERED**

cc: Antonio T. Massey
267897
KENTUCKY STATE PENITENTIARY
266 Water Street
Eddyville, KY 42038
PRO SE